UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AI HUA MIAO,<br><br>　　　　　　　　　　　Plaintiff,<br>v.<br>CAIE FOODS PARTNERSHIP, LTD., a Nevada limited liability company; CAIE FOODS PRODUCTION, LLC, a Nevada limited liability company, and DOES 1 through 10, inclusive,<br>　　　　　　　　　　　Defendants. | Case No. 3:22-cv-00463-ART-CLB<br><br>ORDER |

Before the Court are: (1) Plaintiff Ai Hua Miao's motion for a temporary restraining order ("TRO") (ECF No. 20) seeking to freeze $400,000 in assets of Defendants CAIE Foods Partnership, LTD. ("CAIE Partnership"), and CAIE Foods Production, LLC; and (2) Plaintiff's motion to amend complaint (ECF No. 26) seeking to add as a party Shenzhen Dazhen Electronics Co., LTD. ("Shenzhen"), a Chinese company for whom Plaintiff allegedly acted as an agent in contracting with Defendants, as well as several factual allegations. Defendants oppose the motion to amend and argue that amendment would render the motion for a TRO technically moot. (ECF No. 27.) For the reasons set forth in this order, the Court denies Plaintiff's motion for a TRO and grants Plaintiff's motion to amend complaint.

**I.　BACKGROUND**

Plaintiff, a foreign national residing in California, filed her complaint in this Court on October 20, 2022. (ECF No. 1 ("Complaint") at ¶¶ 1, 9.) According to her complaint, Plaintiff responded to an advertisement representing that CAIE Partnership could help individuals attain an investment immigration visa by investing in CAIE Partnership. (Complaint at ¶ 9.) On or about February 12, 2020,

Plaintiff entered into a contract with CAIE Partnership which stated that Plaintiff viz. Shenzhen would invest a total of $400,000 and with assistance from CAIE Partnership establish a U.S. company called "American Dazhen Electronics Co., Ltd." with Shenzhen as its sole owner. (*Id.* at ¶ 10; ECF No. 1-2 ("Contract") at ¶¶ 1, 3.) CAIE Partnership would in turn assist Plaintiff in hiring an immigration lawyer and handling the application for immigration to the United States. (Contract at ¶ 4.)

Plaintiff alleges that she transferred the $400,000, after which CAIE Partnership registered the company for Plaintiff and represented that the immigration process would be completed within one year. (Complaint at ¶ 12.) Plaintiff was advised in March 2020, during the Covid pandemic, that an attorney had been hired. (*Id.* at ¶¶ 13-14.) Plaintiff alleges that in the year that followed, Plaintiff contacted CAIE Partnership on multiple occasions and asked the representative to ask the attorney to move the case forward, to which the representative would "provide a variety of different explanations to Plaintiff for the delay in her case, such as the attorney having a death in her family or the attorney / her staff contracted COVID and could not process Plaintiff's case." (*Id.* at ¶ 16.) In March 2021 Plaintiff demanded that her money be returned since CAIE Partnership had not provided any indication that her immigration case was moving forward. (*Id.* at ¶ 18.) Instead of refunding the money, CAIE Partnership's representative, Penny, informed Plaintiff that another employee, Wendy Deng, was taking over Plaintiff's case, and Wendy requested certain documents and Plaintiff provided "all available documents she possessed[.]" (*Id.* at ¶ 19.) Time passed with no progress until September 2021 when an individual named Mark Ma at CAIE Partnership advised Plaintiff he was now in charge of her case and requested additional documents which Plaintiff provided. (*Id.* at ¶ 22.) In December 2021, "[a]fter several follow ups[,]" Mark stated that all the previously provided documents would have to be translated, which upset Plaintiff because

this was the first time CAIE Partnership had stated the documents would need to be translated. (*Id.* at ¶¶ 23-24.)

Plaintiff provided the translated documents on January 7, 2022, which Mark indicated were received and provided to the immigration attorney. (*Id.* at ¶¶ 25-26.) After several more follow-ups through the spring of 2022, on July 24, 2022, Plaintiff demanded to know the identity and contact information of the attorney and Mark gave Plaintiff the identity of the attorney but did not provide contact information. (*Id.* at ¶¶ 27-34.) Mark then stated on July 28, 2022, that he did not have the attorney's telephone number because the attorney moved offices and then allegedly "changed his story, stating that if Plaintiff contacted the attorney directly it would cost $300 an hour" as well as that "the attorney is very busy and does not respond." (*Id.* at ¶¶ 35-36.) On August 17, 2022, Plaintiff asked for proof that the immigration action had been filed or was moving forward and Marked stated that Plaintiff needed to speak with Penny, who had ceased responding to Plaintiff. (*Id.* at ¶¶ 37-38.)

Plaintiff sought her own legal counsel in late August 2022, and Plaintiff's counsel contacted the attorney who CAIE Partnership advised was hired on Plaintiff's behalf. (*Id.* at ¶ 39.) In a letter dated October 5, 2022, the attorney, Margaretha M. Smit, Esq., stated that "[w]hen in December 2020 I was first asked to look into the immigration matter for Mrs. Aihua Miao, I sent a list of required documents to CaiE Foods [sic] which they then forwarded to Mrs. Miao [who] responded that they did not know how to get these documents. CaiE Foods then hired an office clerk, Wendy Deng, to handle the document exchange [who] repeated the request for required documents by email in March 2021. It was not until December 2021 when CaiE Foods finally received some documents[, and u]pon review of the documents, I realized that only part of the documents requested had been provided. It is my understanding that Wendy has been explaining to your clients over and over again that we need the complete list of

documents[, and s]ince your clients have not been forthcoming on their end, I have been unable to file their case." (ECF No. 1-3.)

Plaintiff claims that the notion that she had not provided documents is "completely false" and states that "[t]here is no indication that CAIE Foods ever advised the attorney that Plaintiff wished to speak directly with the attorney." (Complaint at ¶ 41.) Plaintiff brings five claims: (1) breach of contract against CAIE Partnership; (2) fraud against CAIE Partnership; (3) conspiracy to commit fraud against all defendants; (4) constructive trust against all defendants; and (5) injunctive relief against all defendants. (*Id.* at 43-75.)

## II.    MOTION FOR A TEMPORARY RESTRAINING ORDER

Plaintiff filed her motion for a TRO on January 17, 2023. (ECF No. 20.) Plaintiff asserts that she "has paid $400,000.00 to Defendants and is seeking to ensure that this money is not further transferred or disposed of pending this litigation." (*Id.* at 6.) She states that she has a high likelihood of success on the merits and argues that "[t]he possibility that a defendant will dissipate assets, leaving them unavailable, can constitute irreparable harm" and that "given the breadth of the alleged fraud over several years, Defendants can easily dissipate the $400,000.00 if it has not done so already." (*Id.* (citing *In re Focus Media, Inc.*, 387 F. 3d 1077 (9th Cir. 2004)).) Defendants argue that they are not liable to Plaintiff since she repeatedly failed to provide documents and that Plaintiff has an adequate legal remedy, namely money damages. (ECF No. 21.)

Courts employ the same standard for issuing a TRO as that for issuing a preliminary injunction. *Quiroga v. Chen*, 735 F. Supp. 2d 1226, 1228 (D. Nev. 2010). The moving party must demonstrate that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of relief; (3) the balance of equity tips in its favor; and (4) the injunction is in the public interest. *See Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)). In *Grupo Mexicano*

*de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 320 (1999), the Supreme Court of the United States set forth the general principle that a preliminary injunction to freeze or restrain assets in a case for money damages or collection of a legal debt is not within the court's traditional equitable powers and therefore unauthorized. The Court emphasized that the power for a district court to freeze assets whenever there is an allegation of possible later inability to pay would be susceptible to rampant abuse. *Id.* at 330. The case left open the possibility of a preliminary injunction freezing assets in a case seeking equitable relief. *Id.* at 325. In the sole case on this point cited by Plaintiff, *In re Focus Media Inc.*, 387 F.3d 1077, 1085 (9th Cir. 2004), the Ninth Circuit upheld a preliminary injunction in a bankruptcy case where it was alleged that a bankrupt company's sole shareholder was transferring the company's assets to himself for personal use and skirting the bankruptcy proceeding. The Ninth Circuit stated that this did not fall under the general rule of *Grupo Mexicano* because the plaintiff sought the equitable relief of constructive trust in the bankruptcy context. *Id.*

In view of the evidence presently before the Court, the Court finds a TRO to be inappropriate. As Defendants argue, the Court is not convinced that the allegations in this case go beyond a typical breach of contract case for which the legal remedy of money damages is appropriate or that the exception set forth in *Focus Media* applies here given that *Focus Media* was a bankruptcy case. Even assuming, *arguendo*, that the Court does have the equitable power to freeze assets under that exception, the Court does not see a likelihood of irreparable harm as currently presented. Unlike in *Focus Media*, Plaintiff has not presented evidence that Defendants have taken any measures to conceal or transfer away their assets to insulate themselves from a monetary judgment, nor that Defendants face an imminent risk of insolvency. Plaintiff argues that Defendants "admit[ that they] have used Plaintiff's $400,000.00 for running its 'dim sum' business rather than providing Plaintiff agreed upon immigration services" which

5

"further supports a finding of irreparable harm." (ECF No. 25 at 2.) However, since Plaintiff was seeking an investment visa, it is unclear that this was not contemplated by the parties. More fundamentally, absent an agreement to the contrary it is not unlawful for a party who receives money under a contract to make use of it during the performance of the contract. If Plaintiff succeeds in this action, Plaintiff may obtain the balance in money damages. Plaintiff's motion for a TRO is denied.

### III. MOTION TO AMEND COMPLAINT

Plaintiff moves to amend her complaint to add Shenzhen as a party, arguing that Shenzhen is a necessary party under Fed. R. Civ. P. 19 since it was Shenzhen who actually signed the contract. (ECF No. 26.) Plaintiff also seeks to add certain factual allegations that followed from the motion for a TRO and the parties' initial disclosures. Defendants oppose on the basis that Shenzhen is not a necessary party and lacks standing since Shenzhen "paid no consideration" and "did not seek any services under the agreement." (ECF No. 27 at 9.) Defendants also claim that adding Shenzhen would make discovery difficult given that Shenzhen is a Chinese entity and that the filing of an amended complaint would make the existing TRO request moot, requiring refiling.[1]

The Court grants Plaintiff's motion to amend. Shenzhen is a party to the contract and thus has standing to sue for breach of contract. The parties remain free to move the Court for a change in discovery deadlines. Since the Court denies the TRO on the merits, the Court need not consider whether the filing of an amended complaint renders the request for a TRO moot.

///

///

///

---

[1] Defendants also argue that Plaintiff should not be permitted to add the claims for constructive trust and injunctive relief to the complaint. (ECF No. 27 at 8.) However, these claims were already present in Plaintiff's original complaint. (Complaint at ¶¶ 65-75.)

DATED THIS 27th day of March 2023.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE